Raed Gonzalez, Esq.
GONZALEZ OLIVIERI, LLC
2200 Southwest Freeway, Suite 550
Houston, Texas 77098
Tel: 713-481-3040
Fax: 713-588-8683
*Counsel of Record for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| Transito Angel Henriquez Perez, | |
| *Plaintiff*, | Case No. 4:20-cv-3800 |
| v. | |
| Chad F. Wolf, Acting Secretary of the U.S. Department of Homeland Security; Kenneth T. Cuccinelli, Acting Director of the U.S. Citizenship and Immigration Services; Wallace L. Carroll, Houston Field Office Director of the U.S. Citizenship and Immigration Services, | Date: November 9, 2020 |
| *Defendants*. | |

## PLAINTIFF'S COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

This is a complaint for relief under the Administrative Procedure Act ("APA"). The Plaintiff, Transito Angel Henriquez Perez, files the instant complaint against Defendants because the U.S. Citizenship and Immigration Services ("USCIS"), a federal agency within the U.S Department of Homeland Security ("DHS"), violated the APA when it administratively closed Plaintiff's I-485, Application to Register Permanent Residence or Adjust Status ("I-485 Application"), based on a purported lack of jurisdiction. *See* Exhibit 1—Notice of Administrative Closure.

The USCIS's longstanding policy had previously been that it retained jurisdiction over I-485 Applications filed by applicants who were "arriving aliens," such as Plaintiff. Exhibit 2—Previous USCIS Policy Memorandum; Exhibit 3— Previous USCIS Policy Manual at Vol. 7, Part A, Ch. 3, Sec. D.

Recently, however, the USCIS has reversed course, absent regard for the Immigration and Nationality Act ("INA"), relevant Federal Regulations, and controlling precedent from the Board of Immigration Appeals' ("BIA" or the "Board").

The agency now takes the position that individuals who have Temporary Protected Status ("TPS") and are subject to final orders of removal, do not constitute "arriving aliens" when such individuals depart the U.S. on advance parole, travel

abroad, and subsequently return to the county. *See* Exhibit 4—Current USCIS Policy at Vol. 7, Part A, Ch. 3, Sec. D, n. 19. Instead, the USCIS finds that such aliens who return on advance parole, reenter the country in the "status" of TPS holders with final orders of removal or deportation. *Id*. By following this new policy and administratively closing Plaintiff's I-485 Application, Plaintiff maintains that the USCIS has acted arbitrarily, capriciously, not in accordance with the law, thus abusing its discretion.

Moreover, the application of the new, erroneous USCIS policy *retroactively* to Plaintiff's case, violates Plaintiff's Fifth Amendment due process rights under the U.S. Constitution. Therefore, Plaintiff further contends that the USCIS has violated the APA on this basis as well. *See* 5 U.S.C. § 706(2)(B).

In light of these realities, Plaintiff seeks *de novo* review of the USCIS's final agency decision, and a declaratory judgement finding that: (1) the USCIS's new policy violates the notice and comment provisions of the APA; (2) the USCIS has jurisdiction to adjudicate her I-485 Application; (3) the USCIS acted arbitrarily, capriciously, and not in accordance with relevant federal regulations, controlling BIA precedent, and the USCIS's prior policies, when it administratively closed said I-485 Application; (4) the USCIS's new policy cannot be retroactively applied to Plaintiff's I-485 application because such application violates the APA and Plaintiff's due process rights under the Fifth Amendment of the U.S. Constitution;

3

and (5) the USCIS's new policy, and any changes to the Policy Manual, are invalid because, at the time of their approval, adoption, and publication, neither the Secretary of Homeland Security nor the Director of the USCIS, were validly appointed or confirmed and thus, said officials lacked the authority to make or issue policy for the DHS or the USCIS. Plaintiff also seeks relief under the APA to compel the USCIS to reopen and to adjudicate his I-485 Application on the merits.

The instant action is being filed against the following Defendants: Chad F. Wolf, in his purported official capacity as the Acting Secretary of the DHS; Kenneth T. Cuccinelli, in his purported official capacity as the Acting Director of the USCIS; and Wallace L. Carroll, in his official capacity as the Houston Field Office Director of the USCIS.

## I.  INTRODUCTION

1. Prior to the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Division C of Pub. L. 104-208, 110 Stat. 3009-546 (1996), aliens subject to the jurisdiction of the nation's immigration courts were placed in either exclusion or deportation proceedings.[1] In exclusion proceedings, the alien had to have demonstrated that he or she was admissible to the United States. By contrast, in deportation proceedings, the legacy

---

[1] After the enactment of IIRIRA, exclusion and deportation proceedings were consolidated into one type of proceedings: removal proceedings. *See* 8 U.S.C. § 1229a.

Immigration and Naturalization Service ("INS"), had to meet its burden to show that the alien was deportable.

2.  Whether an alien was placed in exclusion or deportation proceedings turned on the existence of the alien having made an "entry." Persons in exclusion proceedings were deemed *not* to have "entered" the United States. As such, aliens in exclusion proceedings were in the same legal position as "arriving aliens" are in presently, i.e., as aliens who are deemed *not* to have been admitted to the United States. *See* 8 U.S.C. § 1101(a)(13)(B). Essentially, "arriving aliens" are treated, in legal terms, as if they are still standing at the border and are not technically within the United States.

3.  If an alien was in exclusion proceedings and had a final order of exclusion, or if an arriving alien is currently in removal proceedings or has a final removal order, such individuals were and remain able to adjust their status to that of lawful permanent residents with the USCIS, in accordance with the USCIS's long-standing prior policy. *See* Exhibits 2-3, *supra*; *see also Matter of Yauri*, 25 I&N Dec. 103, 106-07 (BIA 2009) (finding that "arriving aliens" with final removal orders can only adjust their status with the USCIS); *Matter of Castro*, 21 I&N Dec. 379 (BIA 1996) (finding that jurisdiction over adjustment applications filed by aliens in exclusion proceedings lies with the legacy INS).

4.  Contrary to this longstanding position, in 2018, the USCIS began arbitrarily

denying or administratively closing some applications for adjustment of status based on a purported lack of jurisdiction—in direct violation of its policy manual and memorandum in place at the time, the BIA's case law, and relevant federal regulations—while granting other adjustment applications, as discussed further *infra*.

5. On December 20, 2019, the USCIS published a new rule, which stated that the agency lacks jurisdiction over adjustment applications filed by "arriving aliens" who have TPS and final removal orders. *See* Exhibit 4, *supra*. By doing so, the USCIS not only contradicted well-established case law and regulations by publishing this new rule. It also departed from years of established policy which had consistently endorsed the position that the USCIS has exclusive jurisdiction over applications for adjustment of status filed by "arriving aliens."

6. In Plaintiff's view, the USCIS's new policy is arbitrary, capricious, an abuse of discretion, not in accordance with the law, and also was enacted without adherence to the requisite notice and comment period. Accordingly, the USCIS's new policy violates the APA. *See* 5 U.S.C. §§ 553, 706(2).

7. By retroactively applying the new policy to Plaintiff's case, the USCIS has also violated the APA and Plaintiff's Fifth Amendment due process rights. *See Dep't of Homeland Sec. v. Regents of Univ. of California*, 140 S.Ct. 1891, 1913 (2020) (finding that when an agency changes course, reliance interests must be taken

into account) (citing to *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016)); *see also Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994) (noting that retroactivity of a new policy is not permitted when said policy would compromise "familiar [due process] considerations of fair notice, reasonable reliance and settled expectations").

8.  Retroactive application of the USCIS's new rule will not only affect Plaintiff herein, but it would also affect thousands of individuals who filed their applications for adjustment of status prior to enforcement of the new rule. Those cases, like Plaintiff's, will be administratively closed or outright denied because of the rule.

9.  Moreover, the retroactive application of the new rule will affect thousands of aliens whose adjustment applications were granted prior to its enactment. Using this new rule, the USCIS could rescind previously granted adjustments, or the agency could deny citizenship to those lawful permanent residents seeking to naturalize, on the basis that their adjustments were improperly granted.

10. The retroactive application of the USCIS's new policy will affect thousands of individuals who have obtained U.S. citizenship after their status was adjusted to that of a lawful permanent resident because the government could initiate denaturalization proceedings, if it determines that individuals were not eligible for adjustment of status at the time their adjustments were granted.

11. Plaintiff further challenges the legality of the new policy as it was promulgated by "acting" officials who did not have the authority necessary to issue such sweeping changes.

12. Plaintiff has exhausted all of his administrative remedies with the agency in this case. Indeed, the USCIS's decision explicitly states that there is no appeal from its determination to administratively close Plaintiff's I-485 Application. *See* Exhibit 1, *supra*. It is thus considered a "final" agency action subject to judicial review by this Court for which there can be no judicially-imposed exhaustion requirement. *See Darby v. Cisneros*, 509 U.S. 137, 147 (1993); *see also* 5 U.S.C. § 704.

13. In sum, the decision of the USCIS to administratively close Plaintiff's I-485 Application, which was based on the USCIS's new policy, should be reversed. As such, this Court should order the USCIS to reopen and adjudicate Plaintiff's I-485 Application on the merits, in accordance with the plain language of the law.

## II.  JURISDICTION AND VENUE

14. This action arises under the INA, 8 U.S.C. §§ 1101 *et seq.*, and the APA, 5 U.S.C. §§ 701 *et seq*. As a result, because this action arises under the federal laws of the United States, subject-matter jurisdiction is proper pursuant to 8 U.S.C. § 1331.

15. Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and (e) because all relevant actions, including the submission and administrative closure of

Plaintiff's I-485 Application, occurred in the USCIS's field office in Houston, Texas. *See* Exhbit 1, *supra*.

### III.   PARTIES

16. Plaintiff, Transito Angel Henriquez Perez, is a resident of Houston, Texas. *Id*.

17. Defendant, Chad Wolf, is sued in his purported official capacity as Acting Secretary of the U.S. DHS, with his office being located at: 2707 Martin Luther King, Jr. Avenue, SE, Washington, D.C. 20528.

18. Defendant, Kenneth T. Cuccinelli, II, is sued in his purported official capacity as the Senior Official Performing the Duties of the Director of the USCIS, which is located at: 20 Massachusetts Avenue, NW, Washington, D.C. 20529. The USCIS is a component agency of the DHS. Mr. Cuccinelli simultaneously purports to hold the position of Senior Official Performing the Duties of the Deputy Secretary of Homeland Security.

19. Defendant, Wallace L. Carroll, is the USCIS Houston Field Office Director. He is sued in his official capacity. He may be served at: 20 Massachusetts Ave., Room 4210, Washington D.C. 20529.

### IV.   STATUTORY AND REGULATORY BACKGROUND

20. Under 8 U.S.C. § 1255(a), an alien may adjust his or her status to that of a lawful permanent resident, provided that: (1) the alien was inspected and admitted or paroled into the United States; (2) the alien makes such an application for

9

adjustment of status; (3) the alien is eligible to receive an immigrant visa; (4) the alien is admissible to the United States; and (5) a visa is immediately available to him or her when the adjustment of status application is filed.

21. The USCIS has the jurisdiction to adjudicate an adjustment of status application unless the Immigration Judge has jurisdiction. 8 C.F.R. §§ 245.2(a)(1); 1245.2(a)(1).

22. The Immigration Judge has exclusive jurisdiction to adjudicate any application for adjustment of status if the alien is in removal or deportation proceedings (other than an "arriving alien"). 8 C.F.R. § 1245.2(a)(1).

23. An "arriving alien" is one who is "an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States' waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport." 8 C.F.R. § 1.2.

24. "An arriving alien remains an arriving alien even if paroled pursuant to...[8 U.S.C. § 1182(d)(5)] of the Act." *Id.*

25. The Immigration Judge can only have jurisdiction over adjustment applications filed by "arriving aliens" if: (1) the alien properly filed the application with the USCIS while the alien was in the United States; (2) the alien departed and

returned to the United States, pursuant to a grant of advance parole; (3) the application was denied by the USCIS; and (4) the DHS placed the alien in removal proceedings *after* the alien's return to the United States on advance parole or *after* the alien's application was denied. 8 C.F.R. § 1245.2(a)(1)(ii).

26. If the USCIS administratively closes an adjustment of status application on the grounds that it lacks jurisdiction to adjudicate it, the administrative closure would be considered the final agency action in the case. As such, no administrative remedies would be left available to an applicant who has received such an adverse decision, and the only option is to judicially assert a violation under the APA. 5 U.S.C. §§ 702, 704.

27. "Agency action" is defined to include the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act. 5 U.S.C. § 551(13).

28. The reviewing court is authorized to compel action by an agency, and hold its actions unlawful and set aside agency action, findings, and conclusions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706.

29. Additionally, a reviewing court is authorized to strike down a rule when the DHS fails to follow the notice and comment procedures. 5 U.S.C. § 553(b)-(d).

30. The Appointments Clause of the U.S. Constitution provides that, the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . Officers, of the United States," though Congress may "by Law vest the Appointment of such inferior Officers as they think proper, in the President alone, in the Courts of Law, or in the Heads of the Departments." U.S. Const. Art. II, § 2, cl. 2.

31. The Federal Vacancies Reform Act, 5 U.S.C. § 3345 et seq. ("FVRA"), is the "exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency . . . for which appointment is required to be made by the President, by and with the advice and consent of the Senate," unless a statute provides otherwise. 5 U.S.C. § 3347(a).

## V.   FACTUAL BACKGROUND

32. Effective March 1, 2003, the DHS assumed responsibility for the functions of the legacy INS. The Secretary of the DHS is now vested with "[a]ll authorities and functions of the Department of Homeland Security to administer and enforce the immigration laws." 8 C.F.R. § 2.1.

33. The USCIS is a bureau within the DHS which is responsible for accepting and adjudicating all applications for adjustment of status, unless, as detailed above, jurisdiction lies with the Immigration Judge.

34. The USCIS Houston Field Office is an agency within the DHS which has been

delegated supervisory authority by the Secretary of the DHS over adjudicating applications for adjustment of status within its jurisdiction. *Id*. The USCIS Houston Field Office is the office with jurisdiction over the administrative closure of Plaintiff's I-485 Application. *See* Exhibit 1, *supra*.

35. Plaintiff is a native and citizen of El Salvador. *See* Exhibit 5—Parole Document. He was ordered removed from the United States on November 14, 1994. *See* Exhibit 1, *supra*.

36. On March 9, 2018, Plaintiff was paroled into the United States by the DHS pursuant to his grant advance parole, which he received through his previous grant of TPS. *See* Exhibit 5, *supra*.

37. By virtue of being the beneficiary of an approved I-130 family visa petition filed on his behalf, Plaintiff filed his I-485 Application with the USCIS on February 15, 2019. *See* Exhibit 6—I-485 Receipt Notice; *see also* Exhibit 1, *supra*.

38. On December 20, 2019, the USCIS issued an alert stating it was "updating the USCIS Policy Manual to clarify the effect of travel outside the United States by temporary protected status (TPS) beneficiaries who have final removal orders.[2]" The USCIS then amended its policy manual by adding a footnote, which states that aliens who have TPS, have removal orders, and travel and return to the

---

[2] *Policy Alert, Effect of Travel Abroad by Temporary Protected Status Beneficiaries with Final Orders of Removal*, USCIS, Dep't of Homeland Security (Dec. 20, 2019). https://www.uscis.gov/sites/default/files/policy manual/updates/20191220-TPSTravel.pdf.

United States pursuant to a grant of advance parole, are not "arriving aliens," but are instead, inspected and admitted in the status of an alien with TPS and a final removal order. *See* Exhibit 4, *supra* at Vol. 7, Part A, Ch. 3, Sec. D, n. 19.

39. Rather than adjudicating Plaintiff's I-485 Application on the merits, the USCIS applied its new policy retroactively and administratively closed Plaintiff's application on the grounds that it lacked jurisdiction to adjudicate it. *See* Exhibit 1, *supra.* In administratively closing the I-485 Application, the USCIS alleged that because Plaintiff's removal proceedings have not been terminated, and since Plaintiff has TPS, he returned to the "status" of an alien with an outstanding removal order when he was paroled into the United States. *Id*. Accordingly, the USCIS concluded that Plaintiff was not an "arriving alien," and thus, could not adjust his status with the agency. *Id.*

40. Given the USCIS's decision administratively closing Plaintiff's I-485 Application—in light of the fact that Plaintiff cannot seek adjustment of status with the immigration court—there are no avenues of relief for him. He therefore files this Complaint requesting that the Court compel the USICS to reopen and adjudicate his I-485 Application on the merits.

## VI.   CLAIMS FOR RELIEF

### 1.  Count 1—Violation of the APA (Notice and Comment)

41. Plaintiff incorporates by reference the allegations in paragraphs 1-40.

14

42. Plaintiff maintains that the new USCIS policy, which went into effect on December 20, 2019, violates the notice and comment provisions of the APA.

43. Notice of any proposed rule change must be published in the Federal Register. 5 U.S.C. § 553(b). After publication, the Government must give the public thirty days to provide comments on the proposed rule. 5 U.S.C. § 553(c)-(d). If an agency does not follow these notice and comment procedures, enforcement of the proposed rule would constitute a violation of the APA.

44. The term "'rule' means the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." *Id.*

45. The USCIS's previous policy provided that it had exclusive jurisdiction over applications for adjustment of status for *all* "arriving aliens," including TPS holders with final orders of removal. *See* Exhibit 3, *supra* at Vol. 7, Part A, Ch. 3, Sec. D. As the exhibits attached herein demonstrate, the USCIS strictly followed the policy. *See* Exhibit 7—Adjustment of Status Decision 1; Exhibit 8—Adjustment of Status Decision 2; Exhibit 9—Adjustment of Status Decision 3; Exhibit 10—Adjustment of Status Decision 4; Exhibit 11—Adjustment of Status Decision 5.

46. However, at the present time, the USCIS—without providing proper notice and

comment—has reversed course and now enforces the position that it no longer has jurisdiction over the type of application filed by Plaintiff. *See* Exhibit 1, *supra*. Therefore, Plaintiff maintains that the USCIS's new policy violates the APA. *See generally* 5 U.S.C. § 553.

## 2. Count 2—Violation of the APA (Arbitrary, Capricious, Abuse of Discretion, and Not in Accordance with the Law)

47. Plaintiff incorporates by reference the allegations in paragraphs 1-46.

48. Plaintiff contends that under the APA, the USCIS's administrative closure of his I-485 Application was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

49. The U.S. Supreme Court has held that an agency's actions may be considered arbitrary, capricious, or an abuse of discretion if said actions inexplicably depart from the agency's own course of adjudication, regulations, or policies. *See INS v. Yang*, 519 U.S. 26, 32 (1996) ("Though an agency's discretion is unfettered at the outset, if it announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as 'arbitrary, capricious, [or] an abuse of discretion'").

50. In this case, the USCIS's general policy was that it retained sole jurisdiction over applications for adjustment of status filed by "arriving aliens," irrespective of

whether they had TPS and final removal orders. *See* Exhibit 3, *supra* at Vol. 7, Part A, Ch. 3, Sec. D. By reversing course and declining to adjudicate these types of applications now, despite the fact that the law provides that the USCIS does have jurisdiction, the agency has acted arbitrarily, capriciously, and has abused its discretion. *See* Exhibit 4, *supra* at Vol. 7, Part A, Ch. 3, Sec. D, n. 19.

51. Moreover, Plaintiff maintains that the USCIS's new policy is not the product of reasoned decision-making. As noted by the D.C. District Court, to survive arbitrary and capricious review, "an agency action must be the product of reasoned decisionmaking [sic]." *Fox v. Clinton*, 684 F.3d 67, 75 (D.C. Cir. 2012). In the case at bar, the USCIS's decision to administratively close Plaintiff's I-485 Application, based on its revised policy, was not the product of reasoned decision making because, as discussed further below, the case law and regulations expressly state that the USCIS retains jurisdiction over adjustment applications filed by "arriving aliens," irrespective of whether they have TPS and final removal orders.

52. Finally, the USCIS's administrative closure of Plaintiff's I-485 Application is not in accordance with the law.

53. The applicable federal regulations and BIA precedent state that the USCIS has jurisdiction to adjudicate an adjustment of status application filed by an "arriving alien," a point which the DHS has even conceded. *See Matter of Yauri*, 25 I&N

17

Dec. at 106-07 ("DHS has stated that it recognizes that the USCIS's jurisdiction over the adjustment application of an arriving alien exists regardless of whether there is an unexecuted removal order that remains outstanding against the alien…Moreover, we emphasize that the existence of a final order of removal does not preclude the USCIS from granting adjustment of status to an arriving alien who is otherwise eligible for adjustment of status."); *see also* 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1).

54. An "[a]rriving alien [is] an applicant for admission coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2.

55. A person who is paroled into the United States would be considered an "arriving alien" because while they are allowed to enter, they are not considered admitted into the United States. *See* 8 U.S.C. §§ 1101(a)(13)(B) ("An alien who is paroled under section 1182(d)(5) of this title or permitted to land temporarily as an alien crewman shall not be considered to have been admitted."); *see also Matter of Oseiwusu*, 22 I&N Dec. 19, 20 (BIA 1998) (holding that an alien who enters the United States with a grant of parole is an "arriving alien").

56. Once again, "[a]n arriving alien remains an arriving alien even if paroled pursuant to [8 U.S.C. § 1182(d)(5)], and even after any such parole is terminated or revoked."). 8 C.F.R. § 1.2.

57. In this case, Plaintiff is an "arriving alien" because he traveled and then returned

18

to the United States at a port-of-entry as an applicant for admission pursuant to his grant of advance parole based on his grant of TPS. *See* Exhibit 5, *supra*.

58. Despite this reality, the USCIS contends—based on its new policy—that even though Plaintiff traveled on advance parole, he is not an "arriving alien" because his removal proceedings have not been terminated and since Plaintiff returned to the "status" of an alien with a final order of deportation upon his return to the U.S. *See* Exhibit 1, *supra*. This conclusion is erroneous as a matter of law for several reasons.

59. First and foremost, Plaintiff does not have an unexecuted order of removal, because said order was fully executed when he departed from the country on advance parole. *See*, *e.g.*, 8 U.S.C. § 1101(g) ("...any alien ordered deported or removed (whether before or after the enactment of this chapter) who has left the United States, shall be considered to have been deported or removed in pursuance of law"); 8 C.F.R. § 1241.7 ("Any alien who has departed from the United States while an order of deportation or removal is outstanding shall be considered to have been deported, excluded and deported, or removed."); *Matter of Bulnes-Nolasco*, 25 I&N Dec. 57, 58 (BIA 2009) (affirming that an alien's departure from the United States while under an outstanding order of deportation has the effect of executing the deportation order and bringing finality to the deportation proceedings); *Stone v. INS*, 514 U.S. 386, 398 (1995) (explaining that deportation

19

orders are "self-executing").

60. As noted in the attached exhibits, the USCIS has even conceded that an alien who departs on advance parole is considered to have executed his or her removal order. *See* Exhibits 10-11, *supra*. Accordingly, any assertion by the USCIS stating that Plaintiff's order of removal remains unexecuted and that he is still in removal proceedings is legally and factually erroneous based on the USCIS's own aforementioned conclusions.

61. Second, the law clearly states that an alien who is paroled into the U.S. is an "arriving alien" and is not "admitted" into the country. *See* 8 U.S.C. § 1101(a)(13)(B) ("An alien who is paroled under section 1182(d)(5) of this title or permitted to land temporarily as an alien crewman shall not be considered to have been admitted."); *see also Matter of Oseiwusu*, 19 I&N Dec. at 19-20.

62. In the case at bar, because Plaintiff was paroled into the United States, he was permitted to enter but was not "admitted" as that term is used in the immigration context. *See* Exhibit 5, *supra*. As a result, since Plaintiff is an "arriving alien," only the USCIS has jurisdiction over his I-485 Application. Therefore, the USCIS's interpretation of the law—under its new policy—is erroneous.

63. Third, there is no such "status" as "an alien with a final outstanding deportation/removal order." *See* Exhibit 1, *supra*. As the Fifth Circuit noted in *Gomez v. Lynch*, there are no-subcategories of unlawful status, such as "being

20

present without admission." 831 F.3d 652, 659 (5th Cir. 2016). Therefore, contrary to the USCIS's assertion, there can be no such status as "an alien with a final outstanding/deportation order" under the INA. Congress has specifically designated what forms of status exist under the INA and "TPS recipient with a final outstanding deportation/removal order" is not one such status sanctioned by the Congress. *Id*.

64. Fourth, the USCIS's position that Plaintiff is not an "arriving alien" because of the Miscellaneous and Technical Immigration and Naturalization Amendments ("MTINA") of 1991 is legally incorrect since MTINA does not alter the fact that Plaintiff is an "arriving alien." *See* Exhibit 1, *supra*. Plaintiff can be an "arriving alien" simultaneously while holding TPS status in the same way that lawful permanent residents can be "arriving aliens" if they meet the requirements under 8 U.S.C. § 1101(a)(13)(C).

65. Plaintiff wishes to note that the USCIS's conclusion that he can adjust his status with the immigration court is also, legally erroneous. As detailed above, the immigration court only has jurisdiction over an "arriving alien's" adjustment of status application if the alien: (1) properly filed the application with the USCIS while the alien was in the United States; (2) departed and returned to the United States pursuant to a grant of advance parole; (3) had an adjustment application that was denied by the USCIS; *and* (4) was placed in removal proceedings by the

DHS *after* the alien's return to the United States on advance parole or *after* the application was denied. *See* 8 C.F.R. § 1245.2(a)(1)(ii).

66. The Immigration Judge does not have jurisdiction over any I-485 Application that Plaintiff might file in removal proceedings because he filed his adjustment of status application with the USCIS *after* he departed and returned to the United States on advance parole, not before, and he did not return to pursue that application. *See Matter of Silitonga*, 25 I&N Dec. 89 (BIA 2009) (finding that under the regulations, "Immigration Judges have no jurisdiction to adjudicate an application filed by an arriving alien seeking adjustment of status, with the limited exception of an alien who has been placed in removal proceedings *after* returning to the United States pursuant to a grant of advance parole to pursue a *previously filed* application") (emphasis added). As a result, while the DHS can certainly initiate new removal proceedings against Plaintiff, he will simply not be able to pursue adjustment of status with the Immigration Judge.

67. In sum, given the law and evidence presented, Plaintiff maintains that judicial review under the APA is proper in this case because the USCIS has acted arbitrarily, capriciously, has abused its discretion, and has not acted in accordance with the law.

### Count 3—Violation of the APA (Retroactivity)

68. Plaintiff incorporates by reference the allegations in paragraphs 1-67.

69. Plaintiff maintains that by retroactively applying the USCIS's new policy to his I-485 Application, the agency violated the APA.

70. The U.S. Supreme Court recently held that when an agency abruptly changes course on a well-settled policy, the agency must take reliance interests into account. *See Dep't of Homeland Sec. v. Regents of Univ. of California*, 140 S.Ct. 1891, 1913 ("When an agency changes course, as DHS did here, it must be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account") (citing to *Encino Motorcars, LLC.*, 136 S. Ct. at 2126) (internal quotations omitted). If these reliance interests are not taken into account, a violation of the APA has occurred. *Id*.

71. In this case, when Plaintiff filed his I-485 Application, he relied on the USCIS's previous policy that the agency retains jurisdiction to adjudicate said application for "arriving aliens" who have TPS and final removal orders. As such, Plaintiff relied, to his detriment, on the USCIS's previously issued policy guidance.

72. Prior to the USCIS's abrupt policy change regarding its jurisdiction to adjudicate I-485 Applications, of the kind Plaintiff submitted, the agency should have taken into account the fact that Plaintiff—and others similarly situated— would rely on its previous policy in adjudicating his I-485 Application. Because the USCIS clearly did not take such reliance interests into consideration, it has violated the APA. *Id*.

23

## Count 4—Violation of Due Process (Retroactivity)

73. Plaintiff incorporates by reference the allegations in paragraphs 1-72.

74. Plaintiff maintains that the USCIS, by retroactively applying its new policy to his case, has also denied his Fifth Amendment due process rights.

75. The Supreme Court has held that retroactively applying a policy (or statute) is not permitted when it would offend the "familiar considerations of fair notice, reasonable reliance, and settled expectations." *Landgraf*, 114 S. Ct. at 1499. When conducting the retroactivity analysis, a court "must ask whether the new [policy] attaches new legal consequences to events completed before its enactment," and inquire into whether there would be "unfairness in imposing new burdens on persons after the fact." *Id.* at 1500.

76. In this case, Plaintiff was not given fair notice of the USCIS's drastic change in policy regarding the adjudication of adjustment of status applications for TPS recipients with final removal orders because the USCIS did not go through the appropriate notice and comment requirements under the APA.

77. Further, as noted above, Plaintiff relied on the previous USCIS policy that it had sole jurisdiction to adjudicate adjustment applications when he filed his I-485 Application.

78. Finally, Plaintiff had a settled expectation that the USCIS would adjudicate his case on the merits, because the USCIS's previous policy stated that it had

jurisdiction over his I-485 Application at the time of its filing.

79. In sum, the USCIS's new policy attaches new legal consequences to Plaintiff's case because prior to issuance of said policy, the USCIS's longstanding position was that it retained exclusive jurisdiction over his I-485 Application. Now, however, since the USCIS has reversed course, and Plaintiff has no other recourse, new legal consequences and burdens that are unfair have been imposed upon him. Therefore, Plaintiff's due process rights have certainly been violated by the USCIS's decision to administratively close his I-485 Application.

### Count 5—Violation of the Appointments Clause and FVRA

80. Plaintiff incorporates by reference the allegations in paragraphs 1-79.

81. During the period when the update to the Policy Manual was developed, approved, and published, neither the DHS nor the USCIS were led by a lawfully serving Secretary or Director.[3] Both Offices were—and are—by law required to remain vacant, so no action, function or duty of either Office may be performed during such vacancy. Only a properly serving Secretary or Acting Secretary of Homeland Security, or Director or Acting Director of USCIS, could promulgate the change to the Policy Manual. Therefore, the updated Policy Manual and new

---

[3] On August 14, 2020, the Government Accountability Office, an independent arm of Congress, determined that both Defendant Wolf and Defendant Cuccinelli were invalidly appointed to their positions and were thus, ineligible to serve in said positions. *See* Kyle Cheney. Politico. GOA find Chad Wolf, Kenneth Cuccinelli are ineligible to serve in their top DHS roles. politico.com/news/2020/08/14/gao-chad-wolf-ken-cuccinelli-ineligible-dhs-395222  (accessed Aug. 14, 2020).

USCIS policy are invalid for this independent reason.

82. Pursuant to the Appointments Clause of the U.S. Constitution, the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . Officers, of the United States" though Congress may "by Law vest the Appointment of such inferior Officers as they think proper, in the President alone, in the Courts of Law, or in the Heads of the Departments." U.S. Const. Art. II, § 2, cl. 2.

83. The Appointments Clause "serves both to curb Executive abuses of the appointment power . . . and to promote a judicious choice of persons for filling the offices of the union." *Edmond v. United States*, 520 U.S. 651, 659 (1997) (internal quotations marks and alterations omitted).

84. Both the Secretary of Homeland Security and the Director of USCIS may be appointed by the President only with the advice and consent of the Senate. 6 U.S.C. §§ 112(a)(1), 113(a)(1)(E).

85. The FVRA, 5 U.S.C. § 3345 et seq., is the "exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency . . . for which appointment is required to be made by the President, by and with the advice and consent of the Senate," unless a statute specifically provides otherwise. 5 U.S.C. § 3347(a).

86. The FVRA limits who may serve as the acting head of an agency "[i]f an officer

of an Executive agency . . . whose appointment . . . is required to be made by the President, by and with the advice and consent of the Senate . . . resigns." *Id*. at § 3345(a).

87. When such office is vacant, only a validly serving Acting Secretary may perform the functions or duties of the position.

88. If there is not an FVRA-compliant official in place to perform the functions and duties of such a presidentially appointed position, the FVRA requires that "the office shall remain vacant." *Id*. at § 3348(b)(1).

89. At the time the USCIS promulgated the updated Policy Manual, the FVRA required that both the Office of the Secretary of Homeland Security and the Office of the Director of USCIS remain vacant. As a result, no officer could perform the function or duties of the Director of USCIS, so no officer could promulgate the updated Policy Manual which is the subject of dispute in this matter.

90. Importantly, the FVRA provides that any action taken by an official who occupies the position contrary to the controlling provisions of the FVRA "shall have no force or effect." *Id*. at § 3348(d)(2). Such actions "may not be ratified." *Id*.

91. Accordingly, the new policy issued by the USCIS, subsequently incorporated into the Policy Manual, should have no force or effect and cannot be ratified,

27

since a contrary interpretation would clearly violate the FVRA.

## VII.   EXHAUSTION

92. Plaintiff incorporates by reference the allegations in paragraphs 1-91.

93. As noted above, Plaintiff is not required to exhaust his administrative remedies with respect to the administrative closure of his I-485 Application because he is contesting a "final" agency action that is subject to judicial review under the APA.

94. The language of 5 U.S.C. § 704 states that an agency action is "final" without regard to whether an alien seeks reconsideration or appeal to a higher agency authority, *unless* there is a statute or regulation that requires the alien to file an appeal and the agency action is inoperative during the appeal.

95. In this case, the USCIS decision states that Plaintiff cannot appeal the USCIS's decision to administratively close his I-485 Application. *See* Exhibit 1, *supra*. Therefore, the USCIS's decision was the final agency action. *Darby*, 509 U.S. at 137. As such, there can be no judicially-imposed exhaustion requirement and judicial review is proper before this Court.

## VIII.   CONCLUSION

96. For the aforementioned reasons, the decision to administratively close Plaintiff's I-485 Application was arbitrary, capricious, an abuse of discretion, not in accordance with the law, a violation of Plaintiff's due process rights, and an

28

application of policy that was not lawfully promulgated. Judicial review by this Court is therefore warranted under the APA.

## IX.   PRAYER FOR RELIEF

97. Wherefore, Plaintiff respectfully requests that this Court:

   a.   accept jurisdiction and venue as proper;

   b.   issue a declaratory judgment that the USCIS's new policy violated the notice and comment provisions of the APA;

   c.   issue a declaratory judgment that the administrative closure of Plaintiff's I-485 Application was arbitrary, capricious, an abuse of discretion, and not in accordance with the law;

   d.   issue a declaratory judgment that the USCIS has jurisdiction to adjudicate Plaintiff's I-485 Application;

   e.   issue a declaratory judgment that the administrative closure of Plaintiff's I-485 Application was a violation of Plaintiff's due process rights;

   f.   issue a declaratory judgment that USCIS's new policy and changes to the policy manual are unlawful and that there was no lawful authority for their issuance;

   g.   issue an order under the APA to compel the USCIS to reopen and adjudicate Plaintiff's I-485 Application on the merits;

   h.   grant reasonable attorney's fees, expenses, and costs of court pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

   i.   grant Plaintiff all other relief as the Court may deem just and proper.

Respectfully submitted,

GONZALEZ OLIVIERI LLC

*/s/ Raed Gonzalez*

_____

Raed Gonzalez, Esq.
Texas Bar No. 24010063
2200 Southwest Freeway, Suite 550
Houston, Texas 77098
Phone: (713) 481-3040,
Fax: (713)588-8683
rgonzalez@gonzalezolivierillc.com
*Counsel of Record for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

Transito Angel Henriquez Perez,

    *Plaintiff*,

        v.

Chad F. Wolf, Acting Secretary of the U.S. Department of Homeland Security; Kenneth T. Cuccinelli, Acting Director of the U.S. Citizenship and Immigration Services; Wallace L. Carroll, Houston Field Office Director of the U.S. Citizenship and Immigration Services,

    *Defendants*.

Case No. 4:20-cv-3800

Date: November 9, 2020

---

## INDEX OF EXHIBITS

---

Exhibit 1—Notice of Administrative Closure
Exhibit 2—Previous USCIS Policy Memorandum
Exhibit 3—Previous USCIS Policy Manual
Exhibit 4—Current USCIS Policy Manual
Exhibit 5—Parole Document
Exhibit 6—I-485 Receipt Notice
Exhibit 7—Adjustment of Status Decision 1
Exhibit 8—Adjustment of Status Decision 2
Exhibit 9—Adjustment of Status Decision 3
Exhibit 10—Adjustment of Status Decision 4
Exhibit 11—Adjustment of Status Decision 5